UNITED STATES of America, Appellee,

v.

Julian DEL PRADO-MONTERO,
Defendant, Appellant.

UNITED STATES of America, Appellee,

v.

Felix Alejandro Quinones ARBOLEDA,
Defendant, Appellant.

UNITED STATES of America, Appellee,

v.

Gilberto GARCIA, Defendant, Appellant.

UNITED STATES of America, Appellee,

v.

Jorge Eliecer Salazar LOBO,
Defendant, Appellant.

UNITED STATES of America, Appellee,

v.

Alberto HURTADO-MICOLTA,
Defendant, Appellant.

UNITED STATES of America, Appellee,

v.

Wilfredo GARCIA, Defendant, Appellant.

Nos. 83-1817 to 83-1819, 83-1828
to 83-1830.

United States Court of Appeals,
First Circuit.

Argued May 11, 1984.

Decided Aug. 8, 1984.

Certiorari Denied Nov. 13 and
Nov. 26, 1984.

See 105 S.Ct. 441, 527.

Eduardo Caballero Reyes, Hato Rey, P.R., for Julian Del Prado-Montero.

Jose A. Fuentes Agostini, Old San Juan, P.R., with whom Law Offices of Benjamin Acosta, Jr., San Juan, P.R., was on brief, for Felix Alejandro Quinones Arboleda.

Jorge Toledo, San Juan, P.R., for Gilberto Garcia.

Miguel T. Morales Adames, Hato Rey, P.R., by appointment of the Court, for Jorge Eliecer Salazar Lobo.

Jorge Miranda, Hato Rey, P.R., by appointment of the Court, for Alberto Hurtado-Micolta.

Juan G. Casasnovas, Hato Rey, P.R., for Wilfredo Garcia.

Ricardo R. Pesquera-Annexy, Asst. U.S. Atty., San Juan, P.R., with whom Daniel F. Lopez Romo, U.S. Atty., Hato Rey, P.R., was on brief, for appellee.

Before COFFIN and BOWNES, Circuit Judges, and PETTINE,[*] Senior District Judge.

COFFIN, Circuit Judge.

These are consolidated appeals by six defendants convicted by a jury of aiding and abetting each other to possess some 57,265 pounds of marijuana with intent to distribute. 18 U.S.C. § 2; 21 U.S.C. §§ 955a(a) and 955a(f). All were acquitted of another count charging possession with intent to import into the United States. All challenge the sufficiency of the evidence and the validity of their sentences. Other errors are also alleged. We affirm.

■ These prosecutions arose from the seizure by Coast Guard personnel of a seventy foot converted fishing vessel, the RANGER, which was found to contain 881 bales of marijuana weighing over 57,000 pounds. The relevant facts favorable to the government follow. On July 14, 1983, after making radar contact, Coast Guard officials aboard a U.S. Navy destroyer, the U.S.S. KIDD, sighted the RANGER at twilight, noting that it was heading due west toward both the Bahamas and the United States, that it carried 5 or 6 antennae (more than normal) and that it obviously carried some cargo, the hull being down to the waterline. No name or markings could be seen at the time. By radio the RANGER's master responded to inquiries, saying that there was no cargo, that the vessel was being delivered from Antigua to new owners in Freeport in the Bahamas, and that there were no documents aboard nor any main beam number discoverable. The master also reported that the vessel was of Honduran registry. He first gave 31483 as the registration number, then he gave 331483. Neither number included the three letters traditionally denoting Honduran registry. When asked why the vessel was northeast of a normal course from Antigua to Freeport, he evidenced no concern. He refused a consensual boarding, saying that the RANGER had a faulty governor and could not start once it had stopped.

Subsequently, the Coast Guard initiated a request through governmental channels and ascertained, by 1:30 p.m. of the following day, July 15, that the RANGER's registry had been "refuted" by Honduras. The KIDD, after ordering the RANGER to stop twice and being twice refused, sounded General Quarters. At 7:00 p.m., the Coast Guard ensign was raised on the KIDD,

[*] Of the District of Rhode Island, sitting by designation.

signifying its Coast Guard control and mis-·sion. The KIDD fired warning shots on both the evening of the 15th and the morning of the 16th, and then resorted to firing disabling shots, which finally brought the RANGER to a halt. Thereafter the RANGER was boarded by a party headed by a Coast Guard officer.

The observations made by the boarding party, as testified to by Coast Guard witnesses, are relevant to and dispositive of the challenge all defendants make to the sufficiency of the evidence. Just before the boarding a person on board the RANGER was seen shredding and throwing into the ocean a paper containing what looked like the contour lines, longitude and latitude markings of a chart. The total crew consisted of nine and had been on this voyage for 14 days. Only three or four would have been required if there had been no need to unload cargo, i.e., if the only obligation of the crew was to deliver the vessel to Freeport. On boarding the RANGER, the Coast Guard personnel found the odor of marijuana "very noticeable". In the middle and aft holds, 881 bales of marijuana, weighing over 57,000 pounds, were found. The middle hold was close to the crew's living area and was covered only by wood planks. The aft hold was covered by a heavy metal lid, which the crew refused to help the Coast Guard open. A powdered milk container similar to others found in the galley was found in the middle hold; a case of empty Coca-Cola bottles similar to those found in the living quarters was found in the aft hold. The main engine appeared to have been tampered with.

These factors parallel the length of voyage, the amount of marijuana on board, the closeness of relationship between captain and crew, and, indeed, the other circumstances that we have previously found sufficient to support conviction for marijuana trafficking. *United States v. Quejada-Zurique,* 708 F.2d 857 (1st Cir.1983).

The other issues raised by some or all of the defendants may be briefly discussed as follows:

■ 1. *Refusal to accept guilty pleas.* Appellants Hurtado-Micolta and Gilberto Garcia attack the refusal of the court to accept their guilty pleas. They allege that because they were forced to proceed to trial they received a more severe sentence than they would have if they had been allowed to plead. But Garcia persistently maintained that he did not know that marijuana was aboard and was not involved in its loading, and Hurtado-Milcolta insisted that he was drunk when he boarded ship and did not know of the marijuana until later. The judge clearly acted within his discretion in concluding that these factual assertions were inconsistent with a plea of guilt.

■ 2. *Imposition of more severe sentences.* Several of the codefendants whose pleas of guilty were accepted received a sentence of two years of imprisonment and from two to three years for a parole term. Appellants were given, after trial, a three to five year prison sentence with a three to five year parole term. All, however, were well within the maximum. Such a discrepancy between sentences imposed on those who have stood trial and those who have not does not constitute reversible error. *United States v. Quejada-Zurique,* 708 F.2d 857, 861–62 (1st Cir.1983).

■ 3. *Validity of the search and seizure.* Various appellants advance several arguments challenging the validity of the seizure and search of the RANGER and the admission of evidence thereby obtained. One is that the evidence does not permit a finding that reasonable and articulable grounds existed for suspecting that the RANGER was engaged in criminal activity, an alleged prerequisite for either questioning or seizing the vessel. Whether or not such grounds are required under the circumstances of this case, our earlier summary of the evidence attending the sighting of and conversations with the RANGER adequately demonstrates the presence of such grounds. A variant of· this argument is that under Article 22 of the Convention on The High Seas, *opened for sig-*

**116**

*nature* April 29, 1958, 13 U.S.T. 2312, T.I. A.S. No. 5200 (entered into force Sept. 30, 1962), the Coast Guard could not seek to verify the RANGER's nationality unless it had reasonable ground to suspect that the vessel was engaged in piracy or the slave trade, or was in reality of United States nationality. Verification is not so limited. *See United States v. Marino-Garcia,* 679 F.2d 1373, 1385 (11th Cir.1982).

In any event, the RANGER, having already been properly determined to be stateless, can not claim the protection of Article 22. It could be treated, not as a "foreign merchant vessel" but as a vessel subject to the jurisdiction of the United States. *Marino-Garcia,* 679 F.2d at 1379–83. Evidence of the contemporaneous Honduran refutation of registry came in without objection. The later admission of a corroborating official document asserting that as of a month later inquiry had revealed no evidence of a Honduran registry was neither prejudicial nor error. The only timely objection was that the document was executed a month after the fact of refutation. But it obviously covered the recent past. We think it clear that the inquiries made of the RANGER, the boarding, and the seizure were not in conflict with United States statutes, international treaties or conventions, or the Constitution.

■ 4. *Violation of the Posse Comitatus Act.* This Act, 18 U.S.C. § 1385, prohibits the use of the Army and the Air Force to enforce the laws of the United States, a proscription that has been extended by executive act to the Navy. Naval Instruction 5820.7 (May 15, 1975). But under the Congressionally authorized regulatory system, the Navy can be given permission to assist the Coast Guard in its law enforcement activities. 32 C.F.R. 213.10(c). Such permission was appropriately granted in the instant case. Appellants' motion to dismiss the indictment on this ground was properly denied.

Other objections raised are without enough merit to be discussed.

*Affirmed.*