**UNITED STATES of America**

v.

**Victor Manuel GERENA, et al.**

**Crim. No. H–85–50 (TEC).**

Dec. 5, 1986.

See also, 649 F.Supp. 1183.

Albert S. Dabrowski, John A. Danaher III, Asst. U.S. Attys., Stanley A. Twardy, Jr., U.S. Atty., David D. Buvinger, Trial Atty., U.S. Dept. of Justice, Hartford, Conn., for the U.S.

Ronald L. Kuby, New York City, for Victor Manuel Gerena and Luis Colon Osorio.

Juan R. Acevedo, Hartford, Conn., for Norman Ramirez Talavera.

Harold Meyerson, New York City, for Ivonne Melendez Carrion.

Diane Polan, New Haven, Conn., for Elias Castro Ramos.

James Bergenn, Shipman & Goodwin, Hartford, Conn., for Carlos Ayes-Suarez.

Richard Reeve, Asst. Federal Public Defender, New Haven, Conn., for Isaac Camacho-Negron.

Linda Backiel, Philadelphia, Pa., for Antonio Camacho Negron.

Leonard I. Weinglass, New York City, for Juan E. Segarra-Palmer.

Margaret P. Levy, Hartford, Conn., for Angel Diaz Ruiz.

Michael Deutsch, Chicago, Ill., for Orlando Gonzalez Claudio.

John Williams, New Haven, Conn., for Hilton Fernandez-Diamante.

Robert J. Maldonado-Rivera, Rio Piedras, P.R., pro se.

F. Mac Buckley, Buckley & Santos, Hartford, Conn., for Paul Weinburg.

Jacob Wieselman, Hartford, Conn., for Luz Berrios-Berrios.

William M. Kunstler, New York City, for Filberto Ojeda Rios.

Michael Avery, Avery & Friedman, Boston, Mass., for Jorge Farinacci Garcia.

## RULING ON DEFENDANT LUIS COLON OSORIO'S MOTION TO DISMISS THE INDICTMENT BASED ON THE GOVERNMENT'S ALLEGED VIOLATION OF THE POSSE COMITATUS ACT

CLARIE, Senior District Judge.

The defendant, Luis Colon Osorio, moves for the dismissal of the indictment against him and his immediate release from custody on the ground that the Government violated 18 U.S.C. § 1385 when it used military equipment, facilities, and personnel to transport him and others from the Courthouse at Hato Rey, Puerto Rico to the Muniz Air Base at the San Juan International Airport; and when the Government used the Stewart Army Air Field as a point of arrival in New York. The Court finds that the defendant is not entitled to the relief sought and therefore denies the motion.

### Facts

The defendant was arrested on August 30, 1985 in Puerto Rico. He and others were then brought before the Hon. Justo Arenas, U.S. Magistrate for the District of Puerto Rico. Two days later, on September 1, 1985, the defendants were ordered removed to the District of Connecticut.

The arrests and subsequent proceedings occasioned two demonstrations in front of the Courthouse at Hato Rey, Puerto Rico; one involving approximately 400 people on August 31; the other involving a smaller group on September 1, the day the defendants were ordered to travel to Connecticut. As a precautionary measure, the Government chose to transport the defendants away from the Courthouse by helicopter. Three Naval helicopters, piloted by Navy personnel, were used to transport the defendants from the Courthouse to Muniz Air Base, a National Guard ramp at the San Juan International Airport.

Subsequently, the defendants, still escorted by U.S. Marshals, boarded a Marshal Service jet flown by an FAA pilot. This jet flew from the San Juan International Airport to the Charleston International Airport, in Charleston, South Carolina, for refueling. From there the plane flew to the Stewart Army Air Field in New York. At Stewart, the plane parked in a civilian freight area and the defendants were escorted from the plane by the Marshals.

### Discussion

The defendant alleges certain illegalities in the Government's method of transporting the defendants from the Courthouse in Puerto Rico to Stewart Air Field in New York. Specifically, he argues that the Government has violated 18 U.S.C. § 1385, commonly known as the Posse Comitatus Act. This Act provides:

> [w]hoever, except in cases and under circumstances expressly authorized by the Constitution or Act of Congress, willfully uses any part of the Army or the Air Force as a posse comitatus or otherwise to execute the laws shall be fined not more than $10,000 or imprisoned not more than two years, or both.

§ 1385 has been interpreted in a number of cases. Its basic purpose is to generally prohibit the use of military personnel in the enforcement of civilian laws. By its terms, however, it is not an absolute prohibition. Courts have upheld the use of military equipment, facilities, and personnel in the administration of civilian matters where expressly provided by law and where permission for such assistance was properly granted. Situations where such permission was appropriately granted include the use of a Navy destroyer in coastal law enforcement activities pursuant to specific statutory and regulatory authorization. *United States v. Del Prado-Montero*, 740 F.2d 113, 116 (1st Cir.1984), *cert. denied*, 469 U.S. 1021, 105 S.Ct. 441, 83 L.Ed.2d 366 (1984).

The defendant challenges as illegal the use of Navy equipment and personnel in transporting him and others from the Courthouse to Muniz Air Base. He also challenges the use of Muniz Air Base and Stewart Air Field as points of departure and arrival. In reviewing these alleged illegalities the Court inquires first whether the use of such equipment, facilities, and personnel was authorized by law and second, whether such authorization, if any, conflicts with any other statutory or constitutional proscription.

Several laws authorize the type of military assistance at issue here. First, 10 U.S.C. § 372 provides that,

> [t]he Secretary of Defense may, in accordance with other applicable law, make available any equipment, base facility, or research facility of the Army, Navy, Air Force, or Marine Corps to any Federal, State, or local civilian law enforcement official for law enforcement purposes.

This includes the assignment of military personnel, provided such assignment is done in accordance with adequate regulation and in compliance with applicable law. 10 U.S.C. § 375.

Second, applicable regulations permit local Department of Defense components to authorize the use of available military equipment for law enforcement purposes. 32 C.F.R. § 213.9(a) provides:

> D[epartment] o[f] D[efense] Components may make available equipment, base facilities, or research facilities to Federal, State, or local civilian law enforcement officials for law enforcement purposes in accordance with this enclosure.

In addition, the rules provide that,

> [t]he following forms of indirect assistance activities are not restricted by the Posse Comitatus Act ...:
>
> .    .    .    .    .
>
> (ii) Such other actions, approved in accordance with procedures established by the head of the DoD Component concerned, that do not subject civilians to the exercise of military power that is regulatory, proscriptive, or compulsory in nature.

32 C.F.R. § 213.10(a)(7). Pursuant to this last regulation, the Court, in reviewing the

legality of the military involvement at issue, must decide whether the assistance in question subjected the defendant "to the exercise of military power that is regulatory, proscriptive, or compulsory in nature." This in itself is a three-part inquiry.

To begin with, it cannot be said that the military's involvement with the Government's transportation methods was regulatory in nature. A power regulatory in nature is one which controls or directs. In the instant case the defendants were under the exclusive control and authority (as well as the physical custody) of the Marshals accompanying them. The military did not exercise any authority or control over the defendants, nor did the military threaten such control or authority. It is insufficient to say that the military might have seized control over the defendants. The remote, unreal threat of such an occurrence does not establish a violation under the regulatory scheme at issue here.

In addition it cannot be said that the military's involvement was proscriptive. A power proscriptive in nature is one that prohibits or condemns. Again, the defendants were at all times in the custody of the Marshals who themselves held the defendants under arrest in accordance with the civilian laws of the United States. The defendants were in no real way subject to the proscriptive powers of the military or military law.

Finally, it cannot be said that the military's involvement was compulsory. A power compulsory in nature is one that exerts some coercive force. The military personnel involved exerted no such force over the defendants. In reality, the military's involvement in the operation is properly characterized as wholly indifferent, passive, and subservient to the Marshals' task.

■ The Court reiterates that § 1385 provides for exceptions to its general prohibition against the use of the military in civilian law enforcement affairs. §§ 372 and 375, together with C.F.R. §§ 213.9(a) and 213.10(a)(7) authorize the military activity at issue here. The Court therefore finds that the Government's transportation method did not violate the Posse Comitatus Act.

■ The question remains, however, whether such statutory authorization is valid given other limitations imposed on the use of military personnel in civilian law enforcement activities. § 1385 is one "embodiment of a long tradition of suspicion and hostility towards the use of military force for domestic purposes." *Bissonette v. Haig,* 776 F.2d 1384, 1389 (8th Cir.1985), *affd. en banc,* 800 F.2d 812 (8th Cir.1986). However, as the Eighth Circuit has recently observed, there are several sources for the limitations imposed on the use of the military in civilian matters. Beside statutory prohibitions there are limits imposed by the Constitution. *Id.* at 1386–87. In reviewing the military involvement at issue here, however, the Court finds no constitutional violation on the part of the Government.

As the Eighth Circuit stated in *Bissonette,*

[c]ivilian rule is basic to our system of government. The use of military forces to seize civilians can expose civilian government to the threat of military rule and the suspension of constitutional liberties. On a lesser scale, military enforcement of the civil laws leaves the protection of vital Fourth and Fifth Amendment rights in the hands of persons who are not trained to uphold these rights. It may also chill the exercise of fundamental rights, such as the rights to speak freely and to vote, and create the atmosphere of fear and hostility which exists in territories occupied by enemy forces.

*Id.* at 1387 (footnotes omitted). However, not every military involvement rises to the level of constitutional ignominy.

Among the legitimate governmental interests promoted by the use of military involvement in civilian affairs is the interest "in improving the efficiency of civilian law enforcement by giving it the benefit of military technologies, equipment, informa-

tion, and training personnel." *Id.* at 1388. Military activity undertaken in furtherance of this interest is necessarily circumscribed by the requirements inherent in the fundamental interest in maintaining a society free from military dominance. However, none of the military participations cited by the defendant begin to approach the level at which basic fundamental interests become jeopardized. The defendant has failed to make a legitimate claim that any of his constitutional rights have been violated. The defendant has also failed to cite any other statute, beside § 1385 which is excepted, prohibiting the military activities at issue here. The Court concludes that the military's involvement was not inconsistent with any constitutional or statutory proscriptions.

### Conclusion

For the foregoing reasons, the defendant's motion to dismiss the indictment is denied.

SO ORDERED.