UNITED STATES of America, Plaintiff-Appellee,

v.

Harold Fernando Perez MUNOZ, Defendant-Appellant.

UNITED STATES of America, Plaintiff-Appellee,

v.

Virgilio RIVAS–IGLESIAS, Rafael Antonio Jimenez Barros, Defendants-Appellants.

Nos. 81–5671, 81–5676.

United States Court of Appeals, Eleventh Circuit.

Nov. 19, 1982.

Certiorari Denied Feb. 22, 1983. See 103 S.Ct. 1229.

Terrence T. Dariotis, Tallahassee, Fla. (Court-appointed), for Munoz.

James R. Flynn, Flynn & Powers, Tallahassee, Fla., for Iglesias.

Roy L. Glass, St. Petersburg, Fla., for Barros.

Nickolas P. Geeker, U.S.Atty., Pensacola, Fla., Michael T. Simpson, Asst.U.S.Atty., Tallahassee, Fla., for U.S.

Appeals from the United States District Court for the Northern District of Florida.

## ON PETITIONS FOR REHEARING

(Opinion August 6, 1982, 11th Cir., 1982, 681 F.2d 1372)

Before RONEY and KRAVITCH, Circuit Judges, and TUTTLE, Senior Circuit Judge.

PER CURIAM:

Because appellants on petition for rehearing contend that there is insufficient evidence to permit the case to go to the jury, we restate the basic facts, following a careful reading of the entire transcript. We strike the section numbered [1] and substitute the following in its place:

■ The government concedes in its brief that "what the government is required to prove under Count II is that an agreement to import marijuana into the United States existed, that each defendant knew of that agreement, and that with that knowledge each defendant voluntarily participated in the agreement."

Here, no one contends that there was not a conspiracy at least on the part of the American captain of the Panamanian flag-ship and "other persons unknown" to do precisely what 21 U.S.C. § 952(a) forbids. A short statement of the facts which could readily be found by the jury is necessary to demonstrate the manner in which the government contends that it adequately carried its burden.

The Alaskan I was a Panamanian vessel, berthed in Colon, Panama. Its crewmen, which included Rivas, as cook, were shipped on at that port and were given promises of wages of $1,000 [1] apiece instead of their usual $60.00 bi-weekly pay, in connection with a trip to Colombia to pick up a load of marijuana and to deliver it "toward the

---

1. The government on oral argument claims that it had been agreed that the amount would be paid in American currency. We do not find any testimony to this effect other than use of the term "$1,000.00." There was evidence that American currency was customarily used in Panama.

north in the Gulf of Mexico." [2] Rivas is the only member of the crew of the vessel whose appeal is now before us. The ship sailed from Panama with an American captain, arrived off Colombia three days later, where it picked up 46,000 pounds of marijuana from small boats. Appellants Barros and Munoz came aboard with the marijuana under the direction of an American named Russell and a Colombian named Cobos. They were armed with a carbine, which they subsequently both carried from time to time on the ship. They performed none of the duties of seamen or members of the crew and according to witnesses had the duty to "guard the marijuana." The ship proceeded to the vicinity of Cozumel, Mexico some five days later, where it then circled for one day until the captain obtained instructions from Russell which he did not communicate to the crew, but after which he set a course north which would take the ship to the coast of Florida. When he reached the Appalachee Bay area on February 27, 1981, a small power boat with Americans, including Russell, aboard, took the American captain from the Alaskan I, the Panamanian captain, the two Colombians, Barros and Munoz, and Rivas, the cook, ashore after a Coast Guard plane had circled the Alaskan I. The Coast Guard went aboard to prevent the vessel from sinking. There they discovered the 23 tons of marijuana. They then arrested the captains, the Colombians, Rivas, and eight or nine other members of the crew, some of whom were subsequently released.

There was additional evidence in the nature of expert testimony to the effect that Mexico was not a marijuana importing country and that only the United States and Canada would be importers north of Colombia.[3] There was also evidence that it was obvious to all on board that the Alaskan I was heading north for the three days after it left the vicinity of Cozumel and that the United States was its obvious des-

tination. There was no evidence that any of these three appellants protested or in any way objected to the then obvious purpose of carrying the cargo of marijuana to the place where it finally ended up, off the coast of Florida.

We deal first with the appeal of Rivas, who was a member of the crew. Here, no one could argue that the evidence did not establish the alleged conspiracy beyond a reasonable doubt at least between the owner of the ship, the American captain, Cobos, the owner of the marijuana, and Russell, the American who oversaw its loading and met the ship on its arrival in the United States. As already stated, the jury could believe that Rivas was signed on at Colon with the promise of wages of $1,000 instead of his usual $60 bi-weekly pay to become a member of the crew of a ship to go to Colombia to pick up a load of marijuana and to deliver it "toward the north in the Gulf of Mexico." Neither is there any dispute about the fact that after it became apparent to all on board that there would be no delivery off the Yucatan peninsula and after the vessel pursued a course to the north for several days, Rivas made no effort to complain or to protest or to notify anybody that he wished to have no part or further participation in the vessel's mission to deliver the load of marijuana. We conclude that these facts sufficiently supplied the nexus with the United States to support the jury's findings as to Rivas.

Moreover, since the decision of the Court of Appeals for the Fifth Circuit (Unit B), by which we are bound, in *United States v. Freeman, et al.,* 660 F.2d 1030 (5th Cir. 1981), the burden on the United States to establish the participation by any crew member on a ship heavily laden with marijuana over a period of several days to prove the existence of a conspiracy and participation of each of those persons as a member of the conspiracy is relatively light. In *Freeman,* the Court said:

---

2. There was other evidence given by the chief engineer that at the time the crew were shipped on they were told they were to deliver the load of marijuana to a port off the Yucatan peninsula known as Woman's Island.

3. Testimony of this kind was considered by this Court in *United States v. Freeman, et al.,* 660 F.2d 1030, 1034 (5th Cir. 1981).

In *United States v. De Weese,* 632 F.2d 1267 (5th Cir. 1980), *cert. denied,* 451 U.S. 902, 101 S.Ct. 1967, 68 L.Ed.2d 290 (1981); we relied explicitly on *United States v. Alfrey,* 620 F.2d 551 (5th Cir. 1980), in holding that:

> ... the probable length of the voyage, the large quantity of marijuana on board, and the necessarily close relationship between the captain and his crew were factors from which the jury could reasonably find guilt beyond a reasonable doubt.

*Id.* at 1273; *see United States v. Alfrey,* 620 F.2d 551, 556 (5th Cir. 1980).

Here we have (1) the same lengthy voyage (10 days); (2) the same large quantity of marijuana (41,000 pounds); and (3) the same close relationship between captain and crew inferable from the length of the voyage and the size of the vessel.... In sum, the three *Alfrey-DeWeese* factors alone would be sufficient to establish a *prima facie* case of conspiracy to import.

660 F.2d at 1035 (footnote omitted).

■ Here, again, we have (1) the same lengthy voyage (10 days) as to two of the appellants and (13 days as to the other); (2) the same large quantity of marijuana (46,-000 pounds); and (3) the same close relationship between captain and crew inferable from the length of the voyage and the size of the vessel. Thus, under *Freeman,* it seems clear that whatever conspiracy had been concocted by the owner of the vessel and the captain and whichever others of the crew (not testified to) may have been in on the entire deal the government has established a prima facie case of conspiracy to import. *See also, United States v. Julio-Diaz,* 678 F.2d 1031 (11th Cir. 1982).

■ Then, dealing with the appeal of the two Colombians, their contentions approach the ingenuous. They argue as if they were mere passengers on board the ship, completely overlooking the evidence that they came on under the direction of the American Russell with the sole purpose of guarding the marijuana which feat they would have fully accomplished but for the fact that the Alaskan I was in a sinking condition when it approached its destination. Nevertheless, they were then taken off the vessel by Russell who provided money for them to find their way to Miami. Being actors in every stage of the handling of the 23 tons of marijuana, and having been placed there and having been met at the end of the destination by one of the principal conspirators, the jury could certainly find that they had full knowledge of the conspiracy and intended to participate in it.

With this substitution for section [1] in the original opinion, the Petition for Rehearing is DENIED.