869 F.2d 9
 UNITED STATES of America, Appellee,
v.
Joaquin JIMENEZ-PEREZ, Defendant, Appellant.
UNITED STATES of America, Appellee,
v.
Jose CABEZA-SOLANO, Defendant, Appellant.
UNITED STATES of America, Appellee,
v.
Melecio PERLAZA, Defendant, Appellant.
UNITED STATES of America, Appellee,
v.
Cristobal GONZALEZ-PARRA, Defendant, Appellant.
 Nos. 88-1468 to 88-1471.
 United States Court of Appeals,
First Circuit.
 Heard Feb. 9, 1989.
Decided March 6, 1989.
As Amended March 10, 1989.
 
 Frederic Chardon Dubos, for defendants, appellants Melecio Perlaza and Cristobal Gonzalez-Parra.
 Ramon Garcia Garcia, San Juan, P.R., for defendant, appellant Jose Cabeza-Solano.
 Lydia Lizarribar-Masini, by Appointment of the Court, for defendant, appellant Joaquin Jimenez-Perez.
 Jorge E. Vega-Pacheco, Asst. U.S. Atty., San Juan, P.R., Criminal Div., with whom Daniel F. Lopez-Romo, U.S. Atty., Hato Rey, P.R., and Jose R. Gaztambide, Asst. U.S. Atty., Rio Piedras, P.R., Criminal Div., were on brief for U.S.
 Before CAMPBELL, Chief Judge, and TORRUELLA and SELYA, Circuit Judges.
 SELYA, Circuit Judge.
 
 
 1
 Appellants, along with eight codefendants, were indicted by a federal grand jury on charges that, in circumstances subject to the jurisdiction of the United States, they aided and abetted each other in the possession of marijuana on board a vessel on the high seas, intending to distribute the weed. See 46 U.S.C.App. Sec. 1903; 18 U.S.C. Sec. 2. After being found guilty by a petit jury, they have now appealed. There is neither need nor cause to wax longiloquent. In our judgment, it is impossible to attribute the slightest merit to any of appellants' assignments of error. Accordingly, we affirm.
 
 
 2
 * All four appellants assert that the trial evidence was too meagre to sustain the verdicts. The barrier which confronts a sufficiency-of-the-evidence challenge in a criminal case is a formidable one: in a proceeding such as this, an appellate court must take the facts in the light most congenial to the prosecution, drawing all reasonable inferences in its favor. United States v. Ingraham, 832 F.2d 229, 230 (1st Cir.1987), cert. denied, --- U.S. ----, 108 S.Ct. 1738, 100 L.Ed.2d 202 (1988); United States v. Cintolo, 818 F.2d 980, 983 (1st Cir.), cert. denied, --- U.S. ----, 108 S.Ct. 259, 98 L.Ed.2d 216 (1987). On this record, appellants cannot conceivably scale such a barrier. We explain why, in capsulated form.
 
 
 3
 This case involves an aborted large-scale marijuana smuggle. The involvement of the four appellants in the affair (or, as they would have it, the lack of any) was similar. Given the proof, the jury could have found that from twelve to fourteen men were present aboard a 60-foot converted shrimper (the "PORFIN"); that the vessel and its complement had been at sea for five or six days, with journey's end not yet in sight; that she was in international waters when boarded; that over 400 bales of marijuana, weighing approximately 37,000 pounds, were stowed in an unlocked, easily accessible hold; that a distinctive odor, emanating from the marijuana, was detectable in the area where the men slept; and that, when the Coast Guard sought to board, some dissembling was attempted. As to the PORFIN itself, the evidence showed that she flew no flag; that she lacked, bow or stern, the customary emblematic emblazonment of a designated home port; that she was so laden as to be riding unusually low in the water; that she carried neither fishing gear nor any legitimate cargo; and that she was outfitted with sophisticated electronic equipment. There was also evidence that most of the appellants knew of the marijuana's existence before the Coast Guard discovered it.
 
 
 4
 Although there was more, we see no point in painting the lily. The evidence just stated was ample to sustain the convictions. The length of the voyage, the huge quantity of marijuana and its perceptibility to even a casual observer, the smallness of the vessel, the fact that the complement was much larger than such a ship would normally require, all militate in favor of the prosecution's theory of the case. We have, time and again, sustained convictions under comparable--indeed, less damning--circumstances. See, e.g., United States v. Molinares Charris, 822 F.2d 1213 (1st Cir.1987); United States v. Guerrero-Guerrero, 776 F.2d 1071 (1st Cir.1985), cert. denied, 475 U.S. 1029, 106 S.Ct. 1233, 89 L.Ed.2d 342 (1986); United States v. Beltran, 761 F.2d 1 (1st Cir.1985); United States v. Lopez, 709 F.2d 742 (1st Cir.), cert. denied, 464 U.S. 861, 104 S.Ct. 187, 78 L.Ed.2d 166 (1983); United States v. Quejada-Zurique, 708 F.2d 857 (1st Cir.), cert. denied, 464 U.S. 855, 104 S.Ct. 173, 78 L.Ed.2d 156 (1983); United States v. Smith, 680 F.2d 255 (1st Cir.1982), cert. denied, 459 U.S. 1110, 103 S.Ct. 738, 74 L.Ed.2d 960 (1983).[1]
 
 
 5
 It is true that the government's case was largely a circumstantial one. It is also true that a jury could perhaps have concluded that appellants were innocent dupes, naive journeymen who, blameless, were caught in the toils of an ongoing drug caper. Yet neither of those possibilities call for reversal in this case. What counts is that, on this record, the jury could certainly have chosen to believe that the converging circumstances pointed toward a more sinister truth and been persuaded thereby of appellants' guilt.[2] And that conclusion, once reached, would be self-reinforcing; if the jury disbelieved defendants' story, it could legitimately have presumed that the fabrication was all the more proof of their guilt. See Quejada-Zurique, 708 F.2d at 861; Smith, 680 F.2d at 260. In fine, the case falls well within our long-held rule:
 
 
 6
 We have repeatedly stated, and today reaffirm, that in a criminal case, "the evidence need not preclude every reasonable hypothesis inconsistent with guilt" in order to sustain a conviction. United States v. Guerrero-Guerrero, 776 F.2d 1071, 1075 (1st Cir.1985), cert. denied, 475 U.S. 1029, 106 S.Ct. 1233, 89 L.Ed.2d 342 (1986). It is enough that ... a rational jury could look objectively at the proof and supportably conclude beyond reasonable doubt that the defendant's guilt had been established.
 
 
 7
 Ingraham, 832 F.2d at 239-40. Because the evidence plainly supported the requisite "two step inference," Steuben, 850 F.2d at 867 (i.e., the jury could reasonably have found that the PORFIN was engaged in obviously illegal activity, and that each of the appellants was ready to assist in the felonious enterprise), the convictions were bottomed on a solid foundation.
 
 II
 
 8
 Unlike their brethren, who question only the quantum of proof, defendants Melecio Perlaza and Cristobal Gonzalez Parra assign error in two further respects. Both initiatives are grounded more in hope than in reason.
 
 A.
 
 9
 First, Perlaza and Gonzalez say that the government never proved that the PORFIN was "on the high seas ... and subject to the jurisdiction of [a United States] Court" when intercepted by the Coast Guard, as charged in the indictment. The evidence, they contend, indicates that the PORFIN was halted in the territorial waters of an unconsenting sovereign nation (Antigua, perhaps), thus undermining the government's assertion of jurisdiction. This contention was not surfaced in the Rule 29 motions below,[3] so we inquire into it only for "clear and gross injustice." United States v. Cheung, 836 F.2d 729, 730 n. 1 (1st Cir.1988) (per curiam); United States v. Greenleaf, 692 F.2d 182, 185 (1st Cir.1982), cert. denied, 460 U.S. 1069, 103 S.Ct. 1522, 75 L.Ed.2d 946 (1983).
 
 
 10
 The inquiry, once undertaken, need not occupy us for long: appellants' position is wrong as a matter of fact and impuissant as a matter of law. The ranking Coast Guard officer, Thomas Hickman, testified without objection that the cutter stopped the PORFIN and boarded her "... in what we determined to be international waters.... east of Barbuda, north of Antigua, outside of the twelve mile territorial waters on the high seas." Trial Transcript, vol. I, at 36. That testimony was (1) uncontradicted, (2) not inherently implausible, (3) from a knowledgeable witness, and (4) apparently accepted by the jury. It was plainly enough to prove the point.[4] There was no "clear and gross injustice."
 
 B.
 
 11
 The last question raised concerns the admission of certain evidence. A member of the Drug Enforcement Administration task force, Jorge Fernandez Maldonado, testified to the street value of the marijuana, saying that it "[f]luctuate[d] between $550 and $600.... [p]er pound" in the relevant time frame. Trial Transcript, vol. II, at 84.[5] In our opinion, it was within the district judge's discretion to allow the evidence.
 
 
 12
 The district courts have considerable latitude in (1) admitting or excluding opinion evidence, e.g., Freeman v. Package Machinery Co., 865 F.2d 1331, 1338 (1st Cir.1988); United States v. Hoffman, 832 F.2d 1299, 1310 (1st Cir.1987); (2) assessing relevancy, e.g., United States v. Tierney, 760 F.2d 382, 387-88 (1st Cir.), cert. denied, 474 U.S. 843, 106 S.Ct. 131, 88 L.Ed.2d 108 (1985); and (3) weighing the balance between probative value and unfair effect, e.g., Freeman, supra, at 1340; Tierney, 760 F.2d at 388. Given these ground rules, no claim of error can successfully be maintained. After all, the evidence showed that the illicit cargo was worth in the neighborhood of 20 million dollars. That was an obvious basis for relevancy. See Guerrero-Guerrero, 776 F.2d at 1076 (in evaluating crewman's "mere presence" defense, value of contraband a factor; a reasonable inference can be drawn "that conspirators conducting a ... high-stakes smuggling operation would not allow ... unwitting bystanders in their midst"); Beltran, 761 F.2d at 6 (similar). And the fact that the evidence may have been harmful to defendants' cause was no reason to keep it from the jury:
 
 
 13
 The fact that a piece of evidence hurts a party's chances does not mean it should automatically be excluded. If that were true, there would be precious little left in the way of probative evidence in any case. "The question is one of 'unfair' prejudice--not of prejudice alone."
 
 
 14
 Onujiogu v. United States, 817 F.2d 3, 6 (1st Cir.1987) (citation omitted).
 
 III
 
 15
 We need go no further. Reduced to bare essentials, appellants' real complaint is that the jury apparently believed the prosecution's evidence and drew adverse--but reasonable--inferences therefrom, rejecting appellants' exotic tales of what had transpired. It is, however, apodictic that a trier of fact is not bound to accept the self-serving stories of persons accused. Cintolo, 818 F.2d at 989. To the contrary, "[i]t was the jury's responsibility to assess the credibility of the witnesses and decide what inferences could be fairly drawn." Molinares Charris, 822 F.2d at 1220. We believe that responsibility was more than adequately fulfilled in this instance.
 
 
 16
 AFFIRMED.
 
 
 
 [1]
 At oral argument, we were told that appellants' case had been bolstered by our recent decision in United States v. Steuben, 850 F.2d 859 (1st Cir.1988). But Steuben cuts in exactly the opposite direction. Here, unlike in Steuben, "the marijuana was ... stowed aboard the vessel where the crew lived in close quarters for an extended period of time ... [and] to which they had direct access...." Id. at 867. Here, unlike in Steuben, there was considerable evidence "that the marijuana cargo could have been perceived by the crew." Id. Here, unlike in Steuben, "the size of the crew was abnormally large ..., which might have supported an inference that the crew would be used to provide the labor for unloading the marijuana." Id. For these reasons, Steuben avails appellants naught. The other cases upon which appellants rely, e.g., United States v. Mehtala, 578 F.2d 6 (1st Cir.1978) and United States v. Francomano, 554 F.2d 483 (1st Cir.1977), are also (factually) dissimilar in (legally) significant ways. See generally Quejada-Zurique, 708 F.2d at 859 (distinguishing Mehtala and Francomano )
 
 
 [2]
 Given the totality of the evidence, it is difficult to see how the smuggle could have been accomplished without appellants' complicity or to credit the somewhat fantastical stories which appellants eventually told. The law, as we have said, "is not so struthious as to compel a criminal jury to ignore that which is perfectly obvious." United States v. Ingraham, 832 F.2d at 240. See also United States v. Smith, 680 F.2d at 260 ("Neither juries nor judges are required to divorce themselves of common sense.")
 
 
 [3]
 All defendants, including Perlaza and Gonzalez, moved for judgments of acquittal at the close of the prosecution's case solely on "mere presence" grounds, i.e., they argued only that the evidence was insufficient to show specific intent to engage in the ongoing criminal enterprise. See Trial Transcript, vol. II, at 87-90. The motions were denied. Id. at 93-94. At the close of all the evidence, the defendants renewed the motions, telling the court that the grounds were "[b]asically the same...." Id. at 166. The motions were again denied. Id. At no time was the jurisdictional point mentioned, let alone raised
 
 
 [4]
 This being so, we need not reach--and take no view of--appellee's alternate theories of jurisdiction and standing
 
 
 [5]
 Counsel for appellant Joaquin Jimenez Perez objected to the question on relevancy grounds. Counsel for Perlaza and Gonzalez did not object. The government argues, with considerable plausibility, that Perlaza and Gonzalez waived the point. Be that as it may, the evidence was admissible, so we choose not to rest our decision on a narrower ground