# United States Court of Appeals
## For the First Circuit

No. 14-2183

UNITED STATES OF AMERICA,

Appellee,

v.

CARLOS JAVIER MAYMÍ-MAYSONET,

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

[Hon. Gustavo A. Gelpí, U.S. District Judge]

Before

Torruella, Hawkins,[*] and Barron,
Circuit Judges.

Raymond Rivera-Esteves, for appellant.
Mainon A. Schwartz, Assistant United States Attorney, with whom Rosa Emilia Rodríquez-Vélez, United States Attorney, Nelson Pérez-Sosa, Assistant United States Attorney, Chief, Appellate Division, and Francisco A. Besosa-Martínez, Assistant United States Attorney, were on brief, for appellee.

February 5, 2016

---

[*] Of the Ninth Circuit, sitting by designation.

**HAWKINS, <u>Circuit Judge</u>**.    Following a jury trial, defendant Carlos Javier Maymí-Maysonet ("Maymí") appeals his convictions for conspiring to possess and aiding and abetting to possess with intent to distribute five kilos or more of cocaine. Maymí contends there was insufficient evidence to sustain the conviction.  We affirm.

## FACTS AND PROCEDURAL HISTORY

In July 2012, Homeland Security agents were conducting an undercover sting operation at the Hampton Inn & Suites in Isla Verde, Carolina, Puerto Rico.  Posing as sellers, they planned a sham drug transaction for five kilos of cocaine at $19,000/kilo. Agents were stationed outside the hotel conducting surveillance and inside a hotel room posing as drug traffickers.  The primary target of the investigation was co-defendant Tirson Rodríguez-Belliard ("Rodríguez").  To arrange the transaction, the agents were using the cooperation of a confidential informant ("CI"), who did not testify at trial.

Around noon, an agent observed Rodríguez and a companion, later identified as co-defendant García-Calderón ("García") arrive, park on a service road, and walk towards the nearby Lupi's Restaurant.  Around 1:11 p.m., the agent saw Rodríguez and García returning from the restaurant, now accompanied by defendant Maymí. The three went to the area where Rodríguez had parked and stationed themselves against a fence.

Shortly thereafter, around 1:37 p.m., the trio were joined by the CI. The men spoke for about three minutes, and then the CI left and walked towards the hotel. At 1:59 p.m., the three defendants walked towards the Hampton Inn; Rodríguez and García positioned themselves near the driveway entrance, while Maymí headed towards a nearby cockfighting ring. Two minutes later, a red Suzuki vehicle exited the cockfighting ring parking lot and drove past the Hampton Inn; the agent could not see who was driving or how many passengers were in the vehicle.

The red Suzuki returned seventeen minutes later (at 2:18 p.m.) and drove into the Hampton Inn parking lot through its driveway entrance and parked. Rodríguez and García had remained stationed by the hotel driveway while the vehicle was gone. Upon its return, they followed it into the hotel parking lot and out of the view of the agent. Two minutes later (2:20 p.m.), the agents inside the hotel received the call indicating the money for the drugs had arrived. At 2:26, Rodríguez and García met the CI in front of the hotel lobby and were joined by the agents inside the hotel. Rodríguez was now carrying a black bag.

García asked the agents if they would go upstairs, count the money, and send the narcotics down for somebody else to take it away ("bring down the work so that the guys can leave . . . ."). Rodríguez, the CI, and one of the agents went upstairs while García and the other agent remained in the hotel lobby. The agent asked

-3-

García if he had eaten, and García replied that he and his companions had eaten.

Rodríguez was arrested upstairs in the hotel room. Agents seized the black bag, which contained $92,500. Rodríguez also had $10,000 in his pocket. At approximately the same time, García was arrested. Three individuals were also arrested in the red Suzuki -- the driver, another passenger, and Maymí. At the time of his arrest, immediately after exiting the back seat of the vehicle, Maymí was found to have $10,500 in cash on his person.[1]

The U.S. Attorney's Office decided not to prosecute the driver and other passenger in the Suzuki, but did bring indictments against Maymí, García, and Rodríguez. The government also decided not to use the CI as a witness. García and Rodríguez pled guilty prior to trial. After Maymí's two-day trial, the jury returned a verdict of guilty on both counts. Maymí moved for a judgment of acquittal, which the court denied. Maymí was sentenced to 240 months in prison and 10 years of supervised release.

## STANDARD OF REVIEW

We review "preserved challenges to the sufficiency of the evidence de novo." United States v. Peña, 586 F.3d 105, 111 (1st Cir. 2009). We must view "the evidence, both direct and circumstantial, in the light most favorable to the prosecution and

---

[1] The parties stipulated at trial that this money was returned to Maymí.

decide whether that evidence, including all plausible inferences drawn therefrom, would allow a rational factfinder to conclude beyond a reasonable doubt that the defendant committed the charged crime." United States v. Cruz-Rodríguez, 541 F.3d 19, 26 (1st Cir. 2008).

## DISCUSSION

Maymí contends that the government failed to present sufficient evidence that he knowingly joined a conspiracy or knowingly aided and abetted Rodríguez and García in committing a crime. While there is no direct evidence of Maymí's knowledge in this case, reliance on indirect evidence is "both permissible and commonplace," United States v. Spinney, 65 F.3d 231, 234 (1st Cir. 1995); circumstantial evidence and the inferences drawn from it may be sufficient to sustain a conviction. United States v. Louder, 23 F.3d 586, 589-90 (1st Cir. 1994). The evidence need not exclude "every possible hypothesis of innocence" to support the convictions. See United States v. Quejada-Zurique, 708 F.2d 857, 861 (1st Cir. 1983). However, "if the evidence viewed in the light most favorable to the verdict gives equal or nearly equal circumstantial support to a theory of guilt and a theory of innocence of the crime charged, this court must reverse the conviction." United States v. Flores-Rivera, 56 F.3d 319, 323 (1st Cir. 1995). Nonetheless, the "evidence in a criminal case should be viewed in its totality, for evidence -- particularly

-5-

circumstantial evidence -- often has an exponential effect." United States v. O'Brien, 14 F.3d 703, 707 (1st Cir. 1994) (citation omitted).

Maymí argues that his presence at the scene of the meeting between the co-defendants and the CI cannot demonstrate his willing participation in the illegal activities. The jury here was properly instructed that mere presence at the scene of a crime is not enough, but that the requisite intent may be inferred from the surrounding circumstances. See id. at 859. In addition, "[j]urors can be assumed to know that criminals rarely welcome innocent persons as witnesses to serious crimes and rarely seek to perpetrate felonies before larger-than-necessary audiences." United States v. Ortiz, 966 F.2d 707, 712 (1st Cir. 1992).

Furthermore, Maymí was not only present at the meeting with the CI, he was also found in the backseat of the red Suzuki in the hotel parking lot with a substantial amount of cash on his person. The car departed the parking lot two minutes after Maymí returned from the conversation by the fence with the co-defendants, and returned to the hotel two minutes before the co-defendants notified the agents they had the money for the deal. The co-defendants waited at the entrance of the hotel parking lot, watched the vehicle leave, and walked in its direction when it returned. And, minutes after the vehicle returned, Rodríguez was spotted in the parking lot with a black bag in his hands -- the

same black bag that would be found to contain the money to be used to purchase the drugs. This timing supports an inference that the car left to pick up the money for the transaction. "When a plausible read of the record supports the verdict, we will not overturn the jury's determination on appeal." United States v. Morales-de Jesús, 372 F.3d 6, 21 (1st Cir. 2004).[2]

If each piece of the puzzle were viewed individually, then Maymí would have a better argument. But taken altogether, the indirect evidence pushes these "mere coincidences" over the edge. See O'Brien, 14 F.3d at 707 ("A beehive near a country lane tells a stranger very little about the use to which the property is devoted. Yet, if there are eighty or ninety beehives in a shed, who would doubt that he had stumbled upon an apiary?"). Jurors "are neither required to divorce themselves from their common sense nor abandon the dictates of mature experiences." United States v. Hernández, 995 F.2d 307, 314 (1st Cir. 1993). Viewing the evidence in the light most favorable to the government, as we must, we cannot say that the evidence "gives equal or nearly equal

---

[2] We also note that we are called upon to consider "the record evidence (and any reasonable inferences therefrom) as a whole . . . ." to determine whether the evidence is sufficient to sustain the verdict. United States v. Downs-Moses, 329 F.3d 253, 261 (1st Cir. 2003) (emphasis added). Thus, we will not engage in speculation about what stronger evidence the government could have presented in its case-in-chief. We ask only whether the evidence it did present, viewed in the light most favorable to the prosecution, would have permitted a rational jury to find the defendant guilty beyond a reasonable doubt. Id. The civil cases cited by the dissent in footnote 1 do not alter our task.

circumstantial support to a theory of guilt and a theory of innocence," <u>Flores-Rivera</u>, 56 F.3d at 323. Here, there are too many proximate connections between Maymí's actions and those of the drug traffickers. And so the jury could reasonably infer Maymí's knowing participation in or aiding and abetting the conspiracy from the sequence of events.

**AFFIRMED.**


**-Dissenting Opinion Follows-**

**TORRUELLA, <u>Circuit Judge</u>, dissenting**. There is no doubt that reliance on circumstantial evidence to support a conviction is permissible. <u>United States</u> v. <u>Spinney</u>, 65 F.3d 231, 234 (1st Cir. 1995). A factfinder may certainly draw reasonable inferences based on the evidence. <u>See</u> <u>United States</u> v. <u>Loder</u>, 23 F.3d 586, 589-90 (1st Cir. 1994). "[T]he cumulative probability of guilt created by all the evidence, rather than the probability of guilt created by a single piece of evidence, . . . is the touchstone in deciding whether a reasonable jury could find the defendant guilty beyond a reasonable doubt." <u>United States</u> v. <u>Burgos</u>, 703 F.3d 1, 15 (1st Cir. 2012) (quoting <u>United States</u> v. <u>Williams</u>, 698 F.3d 374, 379 (7th Cir. 2012)). And, of course, a jury verdict that represents a "plausible rendition of the record" must be allowed to stand. <u>United States</u> v. <u>Ortiz</u>, 966 F.2d 707, 711 (1st Cir. 1992).

But "to sustain a conviction for conspiracy . . . the evidence must show that (1) a conspiracy existed, (2) the defendant had knowledge of the conspiracy, and (3) the defendant knowingly and voluntarily participated in the conspiracy." <u>United States</u> v. <u>Dellosantos</u>, 649 F.3d 109, 116 (1st Cir. 2011). "With respect to the second element, the Government must establish that the defendant had knowledge of the crime charged." <u>Burgos</u>, 703 F.3d at 10 (citing <u>United States</u> v. <u>Pérez-Meléndez</u>, 599 F.3d 31, 43 (1st Cir. 2010)). Specifically, where a defendant is charged with conspiracy to possess a controlled substance with intent to

-9-

distribute, "[s]howing that the defendant had knowledge of generalized illegality is insufficient; the Government must show that the defendant knew the conspiracy involved a controlled substance . . . ." Id. (internal citations omitted) (emphasis added) (citing Pérez-Meléndez, 599 F.3d at 41). To satisfy the third requirement, the Government had to show "that the defendant both intended to join the conspiracy and intended to effectuate the objects of the conspiracy." Dellosantos, 649 F.3d at 116 (citing United States v. Portalla, 496 F.3d 23, 26 (2007)). To satisfy the third prong, "[a] defendant 'must in some sense promote [the conspiracy] himself, make it his own, have a stake in its outcome.'" Burgos, 703 F.3d at 11 (quoting United States v. Aponte-Suárez, 905 F.2d 483, 491 (1st Cir. 1990)).

"[T]o establish aiding and abetting liability, the [G]overnment [had to] prove, first, that the principal committed the substantive offense charged, and second, that the accomplice 'became associated with [the principal's criminal] endeavor and took part in it, intending to assure its success.'" United States v. González, 570 F.3d 16, 28-29 (1st Cir. 2009) (quoting United States v. Matos-Quiñones, 456 F.3d 14, 20 n.5 (1st Cir. 2006)). In the context of aiding and abetting, "knowledge that one is guilty of some crime is not the same as knowledge that one is guilty of the crime charged." Pérez-Meléndez, 599 F.3d at 43 (quoting United States v. Nieves-Castaño, 480 F.3d 597, 601 (1st Cir. 2007)

-10-

(emphasis in original)).  As we have elsewhere observed, "[m]ere presence at the scene or even knowledge that the crime is being committed is generally insufficient to establish aiding and abetting."  United States v. Quejada-Zurique, 708 F.2d 857, 859 (1st Cir. 1983) (citing United States v. Tarr, 589 F.2d 55, 59 (1st Cir. 1978); see also United States v. Guerrero, 114 F.3d 332, 342 (1st Cir. 1997); United States v. Steuben, 850 F.2d 859, 864 (1st Cir. 1988).

This Court's precedent compels me to conclude that the evidence in this case was not sufficient to give the jury a basis for finding Maymí guilty beyond a reasonable doubt, United States v. Cruz-Rodríquez, 541 F.3d 19, 26 (1st Cir. 2008), of either conspiracy or aiding and abetting.  With respect to conspiracy, the Government failed to prove the essential second and third prongs of that charge, that Maymí knew of the conspiracy -- specifically, that he knew that the conspiracy involved a controlled substance -- and voluntarily participated in it.  See Dellosantos, 649 F.3d at 116.  That evidentiary gap likewise precluded satisfaction of the second prong of aiding and abetting.  González, 570 F.3d at 28-29.

The Government, and majority, believe that Maymí's presence during the conversation with the CI, the content of which was not known to the jury, along with other circumstantial evidence, was sufficient to indicate his knowledge of the drug deal.  I think it is clear that it was not.  Had evidence been

produced that the conversation Rodríguez, García, Maymí, and the CI held by the fence involved planning a drug transaction, the Government's burden of proof likely would have been satisfied, and handily. However, the Government failed to have the CI testify and did not timely submit the recording of that conversation.[3]

Although the majority emphasizes that the jury was instructed that "mere presence at the scene of a crime is not enough," supra at 7, it misses the obvious: Maymí was not present for the crime or at the crime scene. Unlike the defendant in Ortiz, for example, who was silently present during a drug deal,

---

[3] The majority notes that the CI did not testify at trial. Supra at 2. I would add that the record reflects that the Government submitted an informative motion regarding the CI, United States' Informative Motion, United States v. Maymí-Maisonet, No. 3:12-cr-00623-GAG-SCC (D.P.R. Sept. 25, 2013), ECF No. 91, which suggests the Government originally intended that he testify. Maymí's brief noted that "[t]he case initially included a witness identified herein as the CI. Discovery relating to the trustworthiness of the CI was provided to the defense and the district court was informed by the Government before trial that the said witness would not be used." The Government also had but was not able to use in its case in chief "a recording wherein the defendant is heard conversing with the CI and with the two other defendants discussing the money issue -- the bringing of the money for the purchase of the cocaine" as doing so, counsel conceded to the court, would be "unduly prejudicial" due to late notice to defense counsel. That the Government did not call the CI to testify gives rise to a negative inference as to the favorability of that testimony. Cf. Layne v. Vinzant, 657 F.2d 468, 472 (1st Cir. 1981). And, needless to say, the fact that the Government had a recording of a conversation regarding the money allegedly used in the charged transaction, but was unable to use by reason of the Government's own inaction, cannot only not be used as evidence of knowledge of the criminal enterprise but raises a presumption that the "evidence" not used was not favorable to the Government. Cf. Commercial Ins. Co., of Newark, N.J. v. González, 512 F.2d 1307, 1314 (1st Cir. 1975).

-12-

Maymí was present during a conversation among people who later conducted a drug deal. 966 F.2d at 713. Maymí was never at the scene of the crime, the hotel room. He was in the backseat of the Suzuki outside, which one may glean was not a crime scene, nor connected to the crime, as its two other occupants were released.

Nor did the cash found on Maymí show knowledge of or participation in the drug crime. The Government did not argue that the $10,500 found on Maymí -- which was, as the majority notes, returned to Maymí, supra at 5, n.1, a strong indication that law enforcement could not connect the cash to the crime -- was used to facilitate the drug deal. In fact, in its opening argument, the Government provided that the $102,500 found with Rodríguez was the payment for the "cocaine," making no mention of the $10,500.[4] In closing, the Government -- even as it conceded that Maymí's cash was returned -- argued only that the $10,500 was significant because "not everyone is going to carry more than $10,000 in cash in their pockets just to walk around."

García's statements about how his company had already eaten and "the guys" were in the car, also fail to support even the

_____

[4] I note at this juncture, as a general matter, that I view with increasing skepticism the practice of creating artificial criminal situations to arrest and prosecute individuals for real crimes. See, e.g., United States v. Kindle, 698 F.3d 401, 412-16 (7th Cir. 2012) (Posner, J., concurring in part and dissenting in part), rev'd en banc sub nom. United States v. Mayfield, 771 F.3d 417 (7th Cir. 2014); United States v. Hudson, 3 F. Supp. 3d 772 (C.D. Cal.), rev'd sub nom. United States v. Dunlap, 593 F. App'x 619 (9th Cir. 2014).

inference that Maymí knew of the drug deal. Here, no direct evidence indicated García was referring to the Suzuki; established that "the guys" included Maymí, as the car had two other occupants; or tied the red Suzuki to the drug crime. The release of the Suzuki's other occupants and return of Maymí's $10,500 suggest a lack of involvement.

The circumstantial evidence presented, and the reasonable inferences that could have been drawn from it, simply did not suffice to allow a jury to conclude beyond a reasonable doubt that Maymí knew of the conspiracy to possess and distribute a controlled substance or that he knowingly aided and abetted that crime. See Spinney, 65 F.3d at 234. From the circumstantial evidence, the jury may have inferred that (1) Maymí went to get, or get in, the Suzuki; left in the car; and returned to the Hampton Inn because of the conversation with Rodríguez, García, and the CI; (2) Rodríguez retrieved the black bag later found to contain the cash from the Suzuki; and (3) García's statement to Ramos about "the guys" referred to the driver and at least one other occupant of the Suzuki, implicating them as people waiting to receive the "work" and leave with it -- and no more. See Loder, 23 F.3d at 589-90.

As in Loder, where this Court held that knowledge of a mail fraud scheme could not be imputed when no evidence was introduced that information concerning the scheme was ever communicated to the defendant, here there is no basis for finding

that information about the charged crime was communicated to Maymí. 23 F.3d at 592. There is notably less basis for making such an inference here than there was in Burgos, in which this Court held that even a phone conversation recorded via wiretap in which a police officer defendant informed a drug distributor of surveillance and warned, "let's take it easy for now," along with an unrecorded five-to-ten minute conversation between the two men on the street, 703 F.3d at 6, and evidence of their acquaintance, could only support an inference of knowledge of general illegal activity. Id. at 13-15.

The majority relies on the principle that a jury verdict that represents a "plausible rendition of the record," including inferences, must be allowed to stand. Ortiz, 966 F.2d at 711; see also United States v. Morales-de Jesús, 372 9 F.3d 6, 21 (1st Cir. 2004). It has neglected the corollary that inferences that are "certainly plausible" may still have limited significance. See Pérez-Meléndez, 599 F.3d at 43-44; Burgos, 703 F.3d at 17. Suggestive though they may be, none of the available inferences here establish that Maymí knew of the drug crime specifically or knowingly participated in its commission. Only by "stack[ing] inference upon inference" of limited significance in contravention of our precedent has the majority determined that the jury could have found Maymí's guilt beyond a reasonable doubt. Burgos, 703 F.3d at 9 (citing United States v. Valerio, 48 F.3d 58, 64 (1st

Cir. 1995)).  Without stacking inferences, this Court is left with, at the very most, evidence that suggests knowledge of "generalized illegality," which <u>Burgos</u> held insufficient to sustain a conviction for conspiracy, 703 F.3d at 10, 16, and <u>Pérez-Meléndez</u> determined insufficient to support a conviction for aiding and abetting.  599 F.3d at 46-47.

I thus respectfully dissent from the judgment.