In the

# United States Court of Appeals
## For the Seventh Circuit

No. 02-3834

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

WILLIE LOVE,

*Defendant-Appellant.*

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 00-CR-28—**Joan B. Gottschall**, *Judge.*

ARGUED MAY 27, 2003—DECIDED JULY 18, 2003

Before BAUER, POSNER, and COFFEY, *Circuit Judges.*

BAUER, *Circuit Judge.* A jury found Willie Love guilty of conspiracy to possess cocaine base and of three charges related to his possession of a firearm. The court sentenced Love to a total of 295 months' imprisonment. Love appeals, arguing the government's expert testimony exceeded the scope of the pre-trial notice and violated Federal Rule of Evidence 704(b), and that the prosecutor made an improper comment during closing arguments. For the reasons stated herein, we affirm.

## BACKGROUND

On January 7, 2000, David Johnson met an individual named Pablo to discuss a possible drug transaction. Pablo

was actually an undercover FBI agent whose real name was Paul Vina. Johnson agreed to sell one-half kilogram of cocaine base for $11,000. After the deal was made, Johnson began searching for a supplier. Johnson contacted appellant Willie Love and Love agreed to supply one-half kilogram of cocaine base for $10,500. After Love procured the drugs, he met Johnson to give him four 125-gram quantities of crack cocaine. Because Love had not yet received any compensation for the drugs, he accompanied Johnson to the deal.

Johnson and Agent Vina had agreed to meet at a McDonald's restaurant in Berwyn, Illinois. Johnson arrived at the restaurant with Love following close behind. Johnson got into the passenger seat of Agent Vina's car and showed Vina the cocaine. The two men left the car to retrieve the money located in the trunk. At that moment, FBI agents converged on Johnson and placed him under arrest.

Meanwhile, Agent Mark Horton approached Love's car, identified his office, and told Love that he was under arrest and to turn his car off. Love attempted to escape and collided with an FBI agent's car. Undaunted, he continued to drive toward the exit of the parking lot. As FBI agents scrambled to cut off his means of escape, Love tossed a loaded 9mm Lugar pistol with an obliterated serial number out of his vehicle. Love was finally apprehended after he smashed into another agent's car. The agents searched Love's vehicle and found three cellular phones (one which was registered to another individual) and a pager.

Prior to trial, the government notified Love that it would call a drug trafficking expert. The government tendered Agent Wayne Hunter, an investigator with the Drug Enforcement Administration, as an expert under Federal Rule of Evidence 702. The government said that

Hunter would testify, inter alia, about "the use of third parties for security and concealment purposes" in drug transactions. The district court accepted Hunter as an expert under FRE 702. At trial, Hunter testified that the amount of base cocaine seized from Johnson was consistent with distribution quantities. He further noted that weapons are common at drug deals and drug dealers often conceal the ownership of their cell phones. Finally, Hunter testified about the presence of third parties at drug sales:

> AUSA: Now, based on your training and experience, is it common for persons involved in a drug conspiracy to bring people to a drug deal who do not know what is going on?
>
> Hunter: No, ma'am. The only time that I've seen in sixteen years an individual bring someone else to a drug deal is to fulfill a very specific role, a role similar to what I've described earlier, protection, counter-surveillance, a ruse family. That type of thing.

Love also asserts that the prosecutor made an improper comment during closing arguments when he made reference to "a lawyer's trick." During the cross-examination of co-defendant, David Johnson, Love's counsel attempted to place Johnson's veracity in doubt by questioning Johnson about testimony his girlfriend had given at his bond hearing. Johnson experienced difficulties recalling the details of this subject matter. During closing argument, defense counsel seized upon this line of questioning:

> And he lied before your very eyes when he testified. He was on the stand, I think it was Tuesday, I said you remember when the mother of your children got on the witness stand . . . and said you worked at this

body shop? Do you remember that? No, I have no rec-ollection. It didn't happen.

Here is the mother of your children . . . polluting the courtroom with perjury, and you don't remember it. Can you believe that? Can you believe that for one second that you would allow someone close to you to do that and you don't remember it?

And then what I had to do was come back the next day with the transcript. And I show it to him. I said is this the transcript? Is this Ms. Moore's testimony? He says yes it is. Now all the sudden he remembers. He changed his testimony right before your eyes.

In rebuttal, the government pointed out that Johnson's credibility was not damaged because defense counsel asked about specific questions, which Johnson could not pos-sibly remember verbatim:

AUSA:      Now, [defense counsel], who is a very skilled questioner, talked to you a mo-ment about his common-law wife's testi-mony that he asked David Johnson about. And I want to point out a lawyer's trick that you saw.

DEFENSE:   Objection to lawyer's tricks, Judge. That's improper.

COURT:     Sustained.

AUSA:      I will withdraw my comment, your Honor.

The jury found Love guilty of conspiracy to possess 476 grams of cocaine base with the intent to distribute, in violation of 21 U.S.C. § 846; carrying a firearm in fur-therance of a drug trafficking crime, in violation of 18 U.S.C. § 924(c); possessing a firearm after previously being convicted of a felony, in violation of 18 U.S.C. § 922(g)(1); and possessing a firearm with an obliterated

serial number, in violation of 18 U.S.C. § 922(k). The court denied Love's motion for a new trial and sentenced him to 295 months' imprisonment.

## ANALYSIS

### A.  Expert Testimony

Love argues that Agent Wayne Hunter's testimony exceeded the scope of the pre-trial notice and also violated Federal Rule of Evidence 704(b) because he testified as to Love's state of mind. The government asserts review is for plain error because Love failed to object to the expert's testimony. We agree. The transcript reveals an absence of any objection from Love when the testimony at issue was elicited, thus, we review the decision to admit such testimony for plain error. *United States v. Curtis*, 280 F.3d 798, 801 (7th Cir. 2002).

Love's first argument centers on a single, specific comment from Hunter, which was elicited in the following colloquy:

> AUSA: Now, based on your training and experience, is it common for persons involved in a drug conspiracy to bring people to a drug deal who do not know what is going on?
>
> Agent Hunter: No, ma'am. The only time that I've seen in sixteen years an individual bring someone else to a drug deal is to fulfill a very specific role, a role similar to what I've described earlier, protection, counter-surveillance, a ruse family. That type of thing.

Love argues that this statement exceeded the scope of the government's proffer. His contention is without merit.

In the government's final proffer, it notified Love that Hunter would explain "the security measures that are common in transactions including street-level distribution of crack . . . [and] the use of third parties for security and concealment purposes (for example, to conduct countersurveillance, hold weapons, drugs, or money, or to make the deal appear innocent)." That is precisely what Hunter did at trial. Hunter's testimony is a replica of the government's pre-trial notice.

Love next contends that Hunter's testimony violated Federal Rule of Evidence 704(b) because he expressed an opinion as to Love's mental state. Federal Rule of Evidence 704(b) provides:

> No expert witness testifying with respect to the mental state or condition of a defendant in a criminal case may state an opinion or inference as to whether the defendant did or did not have the mental state or condition constituting an element of the crime charged or of a defense thereto. Such ultimate issues are matters for the trier of fact alone.

The critical question is whether the expert referred to the intent of the defendant. *United States v. Lipscomb*, 14 F.3d 1236, 1239 (7th Cir. 1994). Agent Hunter clearly did not. Love fails to show a single instance where Hunter spoke about Love's mental state. Hunter spoke about the common practices of drug dealers and how typical drug sales occur. We have long held that such testimony is permissible. *See, e.g., United States v. Cruz-Velasco*, 224 F.3d 654, 660 (7th Cir. 2000); *United States v. Brown*, 7 F.3d 648, 652 (7th Cir. 1993); *United States v. Foster*, 939 F.2d 445, 451 (7th Cir. 1991). Hunter spoke in general terms, not specifically about Love. Moreover, at trial, the government emphasized that Hunter's opinion was based on his knowledge of common criminal practices and not on some special knowledge of or assumption about Love's

mental processes. The generalized nature of Hunter's testimony and his lack of involvement with Love's case were readily apparent throughout the direct and cross examinations of Hunter, and thus, FRE 704(b) was not violated.

## B.  *Prosecutorial Misconduct*

We review the denial of a motion for a new trial for an abuse of discretion. *Whiting v. Westray*, 294 F.3d 943, 944 (7th Cir. 2002). Under the abuse of discretion standard, we reverse only if we have a strong conviction of error. *United States v. Xiong*, 262 F.3d 672, 675 (7th Cir. 2001).

We are asked to decide whether the prosecution's remark about a "lawyer's trick" was improper. If it is not, our analysis ends and the defendant's claim fails. *United States v. Whitaker*, 127 F.3d 595, 606 (7th Cir. 1997). The propriety of the comment is a difficult question. But even if a prosecutor's comment was improper, the question remains as to whether the remark "so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Darden v. Wainwright*, 477 U.S. 168, 181 (1986) (quoting *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974)). To determine whether a defendant was so prejudiced, we consider the following: 1) whether the prosecutor misstated the evidence; 2) whether the remark implicated specific rights of the accused; 3) whether the defense invited the response; 4) the trial court's instructions; 5) the weight of the evidence against the defendant; and 6) the defendant's opportunity to rebut. *Whitehead v. Cowan*, 263 F.3d 708, 728 (7th Cir. 2001). The most important factor is the weight of the evidence against the defendant. *Howard v. Gramley*, 225 F.3d 784, 793 (7th Cir. 2000).

Applying these factors to this case, it is apparent that the prosecutor in no way misstated the evidence. He simply

commented on defense counsel's impeachment technique. Love does not claim, nor could he, that the remark implicated specific rights. Moreover, the district court properly dealt with the situation. After the objection was made, the district court sustained the objection and the government withdrew the comment. The court also reminded jurors during the jury instructions that statements of counsel are not evidence. Given the isolated nature and lack of gravity of the comment, the court's actions to rectify the situation were sufficient. Moreover, the weight of the evidence against Love is overwhelming. Because Love cannot show the prosecutor's comment affected the outcome of his trial, *United States v. Morgan*, 113 F.3d 85, 89 (7th Cir. 1997), his claim fails. Accordingly, the judgment of the district court is AFFIRMED.

A true Copy:

      Teste:

_____

*Clerk of the United States Court of*
*Appeals for the Seventh Circuit*
