# United States Court of Appeals
## For the First Circuit

No. 06-1362

UNITED STATES OF AMERICA,

Appellee,

v.

EDWARD PORTALLA,

Defendant, Appellant.

---

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Morris E. Lasker, Senior U.S. District Judge]

---

Before

Boudin, Chief Circuit Judge,

Cyr, Senior Circuit Judge,

and Howard, Circuit Judge.

---

James H. Budreau, for appellant.
Thomas M. Gannon, Attorney, Department of Justice, with whom, Michael J. Sullivan, United States Attorney, Michael Pelgro, and Glenn A. MacKinlay, Assistant United States Attorneys, were on brief for appellee.

---

July 31, 2007

---

**CYR**, <u>Senior Circuit Judge</u>.  Edward Portalla challenges his conviction on one count of conspiring to distribute cocaine, 21 U.S.C. § 846, and two counts of money laundering, 18 U.S.C. § 1956, contending that the government adduced insufficient evidence.  We affirm.

## I

## <u>BACKGROUND</u>

Between January 2001 and November 2002, Raphael Tejada, a cooperating witness for the United States Drug Enforcement Agency (DEA), made a series of controlled cocaine purchases from Salvatore ("Rudy") and Anthony ("Tony") Carrillo ("the Carrillos"), as well as their confederate underlings.  The Carrillos utilized cell phones and pagers purchased from Portalla's cell phone store to facilitate the drug sales, many of which occurred at the Carrillos' residences or from their vehicles.  In order to thwart police detection of the Carrillos' drug activities, Portalla arranged that the Carrillos purchase the phones under fake names, and advised them to discard and replace the phones (or the phones' SIM – or "security identity module" – cards) every month, prior to the end of the first billing cycle.  Portalla referred to these as "throwaway phones".[1]

---

[1]In June 2002, Portalla also sold a series of throwaway phones to Rick Adams. Adams met Tony Carrillo during his visits to Portalla's store, where the three men openly discussed the Carrillos' drug business.  Portalla acted as the "middleman" when Tony Carrillo decided to sell his Chelsea cell phone store to

Morever, Portalla provided other services to the Carrillos. For example, he had kept the books for a pool hall operated by the Carrillos, which was a center of their drug trafficking activities. On several occasions, Portalla also provided the Carrillos and their drug confederates with documents, such as W-2 forms, which falsely stated that they were employed by his company Wakefield Communications. The false documents enabled the drug conspirators to purchase expensive houses and luxury automobiles, from which they conducted their drug trafficking activities.

In November 2002, Jill Parker, a confederate of the Carrillos, told Tejada that he could obtain cell phones from Portalla at Wakefield Communications, and provided Tejada with a signed note to give to Portalla, which read: "Sent over." In January 2003, the DEA dispatched Tejada, equipped with a concealed recording device, to the Portalla store to purchase cell phones. When Tejada told Portalla that he had been referred by Jill Parker, Portalla immediately asserted that Tejada would need to purchase "throwaway" phones issued in fake names. Tejada told Portalla that he would come back another time to buy the phones. A week later, Tejada returned to the Portalla store, accompanied by undercover DEA agent Joao Monteiro posing as a drug dealer in need of cell

Adams, and Portalla advised Adams how to provide throwaway phones to his customers.

phones.  During a recorded conversation, Portalla again described the advantages of throwaway phones, particularly their capacity to confound law enforcement detection.  Portalla informed Monteiro that he had provided similar services to the Carrillos.  On January 21 and 30, Monteiro purchased four cell phones from Portalla, under false names, for $600.

In February 2003, DEA agents arrested the Carrillos and their drug confederates, and seized cell phones and pagers purchased from Portalla.  The agents arrested Portalla, then searched his store, where they seized documents related to the sales of cell phones to the Carrillos and Monteiro, as well as the false employment documents Portalla had provided to the Carrillos and their confederates to enable their purchases of houses and automobiles.

Portalla was indicted on one count of conspiring to distribute cocaine, 21 U.S.C. § 846, and ten counts of money laundering, 18 U.S.C. § 1956.  The jury found Portalla guilty on the conspiracy count, as well as two money laundering counts.  In due course, the district court imposed a 120-month prison term. Portalla now appeals from the judgment of conviction.

## II

### DISCUSSION

A.    The Conspiracy Count

Portalla first contends that the government adduced

insufficient evidence to support the Count 1 conviction for conspiring to distribute cocaine.  See 21 U.S.C. § 846.  We review sufficiency-of-the-evidence challenges de novo, viewing all evidence, credibility determinations, and reasonable inferences therefrom in the light most favorable to the verdict, in order to determine whether the jury rationally could have found that the government established each element of the charged offense beyond a reasonable doubt.  United States v. Ossai, 485 F.3d 25, 30 (1st Cir. 2007).

In order to establish the crime of conspiracy, the government must prove the existence of a conspiracy, the defendant's knowledge of the conspiracy, and the defendant's knowing and voluntary participation in the conspiracy.  United States v. Ortiz, 447 F.3d 28, 32 (1st Cir. 2007).  The third "participation" element, the only one Portalla challenges on appeal, requires that the government establish Portalla's intention to join the conspiracy and to effectuate the objects of the conspiracy.  United States v. Lizardo, 445 F.3d 73, 81 (1st Cir.), cert. denied, 127 S. Ct. 524 (2006).  The intention to conspire need not be express, but may be shown by circumstantial evidence. Id.

Portalla contends that the circumstantial evidence against him failed to support a reasonable inference that he intended either to agree to the Carrillos' drug conspiracy or to

advance its illicit goals. Instead, he argues, the evidence adduced demonstrated that he was "merely indifferent" or of peripheral significance to the success or failure of the conspiracy. These claims are meritless.

The appeal essentially rests on Portalla's faulty assertions that, when viewed in isolation, particular items of government evidence (e.g., the fact that Portalla had agreed to put one phone in Tony Carrillo's longtime girlfriend's name, not in a false name which would frustrate law enforcement discovery), was insufficiently probative of Portalla's decision to participate in the Carrillo conspiracy, or in the alternative, that the jury improperly ignored or discounted other evidence (e.g., the Portalla statements that he had advised the Carrillos to "go legit," or "let me stay far away. I don't want nothing to do with [the drug dealing]") which would tend to demonstrate that he decided not to become a conspirator. "[J]uries are not required to examine the evidence in isolation, for individual pieces of evidence, insufficient in themselves to prove a point, may in cumulation prove it. The sum of an evidentiary presentation may well be greater than its constituent parts." United States v. Downs-Moses, 329 F.3d 253, 261 (1st Cir. 2003) (quoting Bourjaily v. United States, 483 U.S. 171, 179-80 (1987)). So it is here.

The government adduced evidence that Portalla knowingly facilitated the Carrillo conspiracy on several occasions by

-6-

providing them with false employment credentials in order to enable purchases of expensive residences and vehicles, which served the Carrillos' drug trafficking enterprise. Portalla's false information enabled the Carrillos to conceal the fact that the bulk of their income derived from illegal drug trafficking. In November 2002, Jill Parker expressly referred Tejada to Portalla as one from whom Tejada could acquire cell phones for use in drug trafficking, advising Tejada to tell Portalla that Parker had sent him. When Tejada contacted Portalla and mentioned Parker, Portalla readily volunteered to supply Tejada with cell phones under a fake name, and advised Tejada simply to use and discard the phones after a month and acquire a new phone under yet another false name. Subsequently, Portalla made similar statements and proposals to Monteiro, noting that he frequently helped the Carrillos to utilize fake names to frustrate law enforcement detection. "[W]e require jurors neither 'to divorce themselves from their common sense, nor to abandon the dictates of mature experience.'" United States v. Morillo, 158 F.3d 18, 22 (1st Cir. 1998) (citation omitted). The cumulative evidentiary weight of these circumstances amply supported a finding that Portalla knowingly and voluntarily decided to participate in the Carrillos' drug conspiracy and to effectuate its goals.

The Portalla effort to circumvent the jury's common-sense determination is utterly unpersuasive. Although neither Portalla's

mere association with the Carrillos nor his mere presence during their drug conspiracy would suffice to establish knowing and voluntary participation in the conspiracy, see Ortiz, 447 F.3d at 32, the mere fortuity that Portalla himself did not sell the drugs, did not exercise a leadership position within the conspiracy, and as the provider of "peripheral" services (viz., the provision of cell phones designed to elude law enforcement detection) was unaware of many details of the Carrillos' drug business, would not foreclose a reasonable jury from convicting him as a coconspirator. See United States v. Rodriguez-Ortiz, 455 F.3d 18, 22-23 (1st Cir. 2006) (noting that each coconspirator need not know of nor have contact with all other members, nor know all the details of the conspiracy or participate in each act in furtherance of it), cert. denied, 127 S. Ct. 1010 (2007); see also U.S. Sentencing Guidelines Manual § 3B1.1 (providing for a sentencing enhancement for defendant's exercise of authority or control over coconspirators).

In addition to the sale of illicit drugs, another obvious goal of the Carrillo conspiracy was the avoidance of police detection. See United States v. Love, 336 F.3d 643, 645 (7th Cir. 2003) ("[D]rug dealers often conceal the ownership of their cell phones."). In this regard, the evidence supports a reasonable inference that Portalla knew he was helping the Carrillos conceal the ownership of the cell phones which were essential tools of their drug trade. See, e.g., Rodriguez-Ortiz, 455 F.3d at 21-23

(holding that defendant's procurement of cell phones for drug coconspirators constituted sufficient evidence that defendant had joined drug conspiracy).

Portalla argues that the government simply proved that he put one phone in the name of Tony Carrillo's longtime girlfriend (viz., not a fake name), notes that Carrillo once refused Portalla's offer to sell him a cell phone under a fake name, and emphasizes that the police seized no physical evidence at his store to establish that the phones he sold to the Carrillos and their confederates were "throwaway" cell phones. However, these assertions not only misrepresent the trial record but discount the appellate standard of review. In his pre- and post-arrest statements, Portalla admitted that he had supplied "throwaway" cell phones to drug dealers, and provided the Carrillos and their confederates with several cell phones, thus inviting the reasonable, non-speculative inference that the several cell phones Portalla sold to his coconspirators were also "throwaways." See Ossai, 485 F.3d at 30 (noting that all reasonable inferences from the evidence are to be construed in favor of jury verdict).

Portalla further contends that he was "merely indifferent" to the success of the Carrillo conspiracy because he would have sold a "throwaway" cell phone to anyone, not only drug dealers, and indeed he had done so on occasion to persons with poor credit. See United States v. Benevides, 985 F.2d 629, 634 (1st

Cir. 1993) ("A conspiracy conviction will not be sustained if the government's evidence shows that a defendant 'was indifferent to the [conspiracy's] outcome altogether.'") (citation omitted). Whatever Portalla's motives for particular phone sales to other customers, however, the fact remains that Portalla sold cell phones to the Carrillo conspirators for the express purpose of enabling them to avoid police detection of their drug trafficking, and his intent to foster the Carrillo conspiracy is corroborated by his decision to provide the Carrillos and their confederates with admittedly false employment credentials.  See United States v. Garcia-Torres, 280 F.3d 1, 4 (1st Cir. 2002) (noting that the provider of even a "peripheral service" can be held liable as a coconspirator where "he knew both that the drug conspiracy existed and that the peripheral service being furnished was designed to foster the conspiracy").

Portalla points to evidence that arguably implies that he affirmatively determined not to participate in the Carrillo conspiracy, such as his statements that he had once advised the Carrillos to "go legit," or "let me stay far away. I don't want nothing to do with [the drug dealing]."  First, whether Portalla in fact made these statements to the Carrillos plainly constituted a credibility determination for the jury.  See United States v. Edelkind, 467 F.3d 791, 793 (1st Cir. 2006), cert. denied, 127 S. Ct. 1921 (2007).  Second, neither statement is necessarily or

-10-

inherently exonerative. The latter statement, for example, might not connote Portalla's desire to refrain from participation in the drug conspiracy, but merely Portalla's desire that the Carrillos do their utmost to conceal his participation in it. "'Neither juries nor judges are required to divorce themselves of common sense,' where, as here, the appellant[s'] portrayal of himself as an innocent bystander[] is 'inherently unbelievable.'" United States v. Cuevas-Esquival, 905 F.2d 510, 515 (1st Cir. 1990) (citations omitted).

Finally, Portalla's citation to cases such as United States v. Aponte, 905 F.2d 491 (1st Cir. 1990), is unavailing. In Aponte, for example, we found insufficient evidence to support a conspiracy conviction where the defendant asked to join in the conspiracy, but was refused, then introduced the conspirators to another person who joined the conspiracy. Id. at 491. We concluded that, despite defendant's act of introducing another potential coconspirator to the conspiracy, the conspirators' refusal to allow defendant to participate in the conspiracy necessarily rendered him "indifferent" because it prevented him from having any stake in the conspiracy's outcome. Id. By contrast, here the government adduced evidence that Portalla was eagerly accepted into the Carrillo conspiracy, and repeatedly provided it with services essential to its success. We therefore affirm Portalla's conspiracy conviction pursuant to 21 U.S.C. §

846.

## B.   The Money Laundering Counts

Portalla maintains that the government adduced insufficient evidence to support his conviction under the two money-laundering counts because Monteiro never told him that the $600 that he used to purchase the four throwaway cell phones constituted drug proceeds, nor was that sum of money sufficient to infer any such an illegal provenance.  See 18 U.S.C. § 1956(a) (requiring that the government prove, inter alia, that the property used in the money-laundering transaction be represented as drug proceeds).  We disagree.

The government need not establish that Monteiro expressly stated that the $600 constituted drug proceeds, provided that the totality of the circumstances, as revealed by all the evidence, would lead a reasonable person to draw that conclusion.  See United States v. Castellini, 392 F.3d 35, 46 (1st Cir. 2004); United States v. Kaufmann, 985 F.2d 884, 893 (7th Cir. 1993).  Monteiro presented himself to Portalla as a drug dealer, expressed his interest in purchasing "throwaway" phones under false names, boasted that he could afford courtside seats for the Celtics, and expressly admitted to Portalla that he had considered laundering money through the Carrillos' pool hall.  Under these circumstances, the jury rationally could find that Portalla reasonably would have inferred that Monteiro was plowing his illicit drug profits back

-12-

into his drug business.  <u>Cf.</u> <u>id.</u> at 893-94 (finding sufficient evidence on "representation" element where car buyer stated he was a drug dealer, and that he wanted to buy the car with cash, using a false name).  We accordingly affirm Portalla's money-laundering convictions pursuant to 18 U.S.C. § 1956(a).

**<u>Affirmed</u>**.