TORRUELLA, Circuit Judge,
dissenting.
There is no doubt that reliance on circumstantial evidence to support a conviction is permissible. United States v. Spinney, 65 F.3d 231, 234 (1st Cir.1995). A factfinder may certainly draw reasonable inferences based on the evidence. See United States v. Loder, 23 F.3d 586, 589-90 (1st Cir.1994). “[T]he cumulative probability of guilt created by all the evidence, rather than the probability of guilt created by a single piece of evidence, ... is the touchstone in deciding whether a reasonable jury could find the defendant guilty beyond a reasonable doubt.” United States v. Burgos, 703 F.3d 1, 15 (1st Cir.2012) (quoting United States v. Williams, 698 F.3d 374, 379 (7th Cir.2012)). And, of course, a jury verdict that represents a “plausible rendition of the record” must be allowed to stand. United States v. Ortiz, 966 F.2d 707, 711 (1st Cir.1992).
But “to sustain a conviction for conspiracy ... the evidence must show that (1) a conspiracy existed, (2) the defendant had *238 knowledge of the conspiracy, and (3) the defendant knowingly and voluntarily participated in the conspiracy.” United States v. Dellosantos, 649 F.3d 109, 116 (1st Cir.2011). “With respect to the second element, the Government must establish that the defendant had knowledge of the crime charged.” Burgos, 703 F.3d at 10 (citing United States v. Pérez-Meléndez, 599 F.3d 31, 43 (1st Cir.2010)). Specifically, where a defendant is charged with conspiracy to possess a controlled substance with intent to distribute, “[s]howing that the defendant had knowledge of generalized illegality is insufficient; the Government must show that the defendant knew the conspiracy involved a controlled substance ...” Id. (internal citations omitted) (emphasis added) (citing Pérez-Meléndez, 599 F.3d at 41). To satisfy the third requirement, the Government had to show “that the defendant both intended to join the conspiracy and intended to effectuate the objects of the conspiracy.” Dellosantos, 649 F.3d at 116 (citing United States v. Portalla, 496 F.3d 23, 26 (2007)). To satisfy the third prong, “[a] defendant ‘must in some sense promote [the conspiracy] himself, make it his own, have a stake in its outcome.’ ” Burgos, 703 F.3d at 11 (quoting United States v. Aponte-Suárez, 905 F.2d 483, 491 (1st Cir.1990)).
“[T]o establish aiding and abetting liability, the [G]overnment [had to] prove, first, that the principal committed the substantive offense charged, and second, that the accomplice ‘became associated with [the principal’s criminal] endeavor and took part in it, intending to assure its success.’ ” United States v. González, 570 F.3d 16, 28-29 (1st Cir.2009) (quoting United States v. Matos-Quiñones, 456 F.3d 14, 20 n. 5 (1st Cir.2006)). In the context of aiding and abetting,' “knowledge that one is guilty of some crime is not the same as knowledge that one is guilty of the crime charged.” Pérez-Meléndez, 599 F.3d at 43 (quoting United States v. Nieves-Castaño, 480 F.3d 597, 601 (1st Cir.2007) (emphasis in original)). As we have elsewhere observed, “[m]ere presence at the scene or even knowledge that the crime is being committed is generally insufficient to establish aiding and abetting.” United States v. Quejada-Zurique, 708 F.2d 857, 859 (1st Cir.1983) (citing United States v. Tarr, 589 F.2d 55, 59 (1st Cir.1978)); see also United States v. Guerrero, 114 F.3d 332, 342 (1st Cir.1997); United States v. Steuben, 850 F.2d 859, 864 (1st Cir.1988).
This Court’s precedent compels me to conclude that the evidence in this case was not sufficient to give the jury a basis for finding Maymi guilty beyond a reasonable doubt, United States v. Cruz-Rodríguez, 541 F.3d 19, 26 (1st Cir.2008), of either conspiracy or aiding and abetting. With respect to conspiracy, the Government failed to prove the essential second and third prongs of that charge, that Maymi knew of the conspiracy — specifically, that he knew that the conspiracy involved a controlled substance — and voluntarily participated in it. See Dellosantos, 649 F.3d at 116. That evidentiary gap likewise precluded satisfaction of the second prong of aiding and abetting. González, 570 F.3d at 28-29.
The Government, and majority, believe that Maymi’s presence during the conversation with the Cl, the content of which was not known to the jury, along with other circumstantial evidence, was sufficient to indicate his knowledge of the drug deal. I think it is clear that it was not. Had evidence been produced that the conversation Rodríguez, Garcia, Maymi, and the Cl held by, the fence involved planning a drug transaction, the Government’s burden of proof likely would have been satisfied, and handily. However, the Government failed to have the Cl testify and did *239 not timely submit the recording of that conversation.[3]
Although the majority emphasizes that the jury was instructed that “mere presence at the scene of a crime is not enough,” swpra at 236, it misses the obvious: Maymi was not present for the crime or at the crime scene. Unlike the defendant in Ortiz, for example, who was silently present during a drug deal, Maymi was present during a conversation among people who later conducted a drug deal. 966 F.2d at 713. Maymi was never at the scene of the crime, the hotel room. He was in the backseat of the Suzuki outside, which one may glean was not a crime scene, nor connected to the crime, as its two other occupants were released.
Nor did the cash found on Maymi show knowledge of or participation in the drug crime. The Government did not argue that the $10,500 found on Maymi — which was, as the majority notes, returned to Maymi, supra at 236, n. 1, a strong indication that law enforcement could not connect the cash to the crime — was used to facilitate the drug deal. In fact, in its opening argument, the Government provided that the $102,500 found with Rodriguez was the payment for the “cocaine,” making no mention of the $10,500.[4] In closing, the Government — even as it conceded that Maymfs cash was returned— argued only that the $10,500 was significant because “not everyone is going to carry more than $10,000 in cash in their pockets just to walk around.”
Garcia’s statements about how his company had already eaten and “the guys” were in the car, also fail to support even the inference that Maymi knew of the drug deal. Here, no direct evidence indicated Garcia was referring to the Suzuki; established that “the guys” included Maymi, as the car had two other occupants; or tied the red Suzuki to the drug crime. The release of the Suzuki’s other occupants and return of Maymfs $10,500 suggest a lack of involvement.
*240 The circumstantial evidence presented, and the reasonable inferences that could have been drawn from it, simply did not suffice to allow a jury to conclude beyond a reasonable doubt that Maymi knew of the conspiracy to possess and distribute a controlled substance or that he knowingly aided and abetted that crime. See Spinney, 65 F.3d at 234. From the circumstantial evidence, the jury may have inferred that (1) Maymi went to get, or get in, the Suzuki; left in the car; and returned to the Hampton Inn because of the conversation with Rodríguez, Garcia, and the Cl; (2) Rodriguez retrieved the black bag later found to contain the cash from the Suzuki; and (3) Garcia’s statement to Ramos about “the guys” referred to the driver and at least one other occupant of the Suzuki, implicating them as people waiting to receive the “work” and leave with it — and no more. See Loder, 23 F.3d at 589-90.
As in Loder, where this Court held that knowledge of a mail fraud scheme could not be imputed when no evidence was introduced that information concerning the scheme was ever communicated to the defendant, here there is no basis for finding that information about the charged crime was communicated to Maymi. 23 F.3d at 592. There is notably less basis for making such an inference here than there was in Burgos, in which this Court held that even a phone conversation recorded via wiretap in which a police officer defendant informed a drug distributor of surveillance and warned, “let’s take it easy for now,” along with an unrecorded five-to-ten minute conversation between the two men on the street, 703 F.3d at 6, and evidence of their acquaintance, could only support an inference of knowledge of general illegal activity. Id. at 13-15.
The majority relies on the principle that a jury verdict that represents a “plausible rendition of the record,” including inferences, must be allowed to stand. Ortiz, 966 F.2d at 711; see also United States v. Morales-de Jesús, 372 F.3d 6, 21 (1st Cir.2004). It has neglected the corollary that inferences that are “certainly plausible” may still have limited significance. See Pérez-Meléndez, 599 F.3d at 43-44; Burgos, 703 F.3d at 17. Suggestive though they may be, none of the available inferences here establish that Maymi knew of the drug crime specifically or knowingly participated in its commission. Only by “stack[ing] inference upon inference” of limited significance in contravention of our precedent has the majority determined that the jury could have found Maymfs guilt beyond a reasonable doubt. Burgos, 703 F.3d at 9 (citing United States v. Valerio, 48 F.3d 58, 64 (1st Cir.1995)). Without stacking inferences, this Court is left with, at the very most, evidence that suggests knowledge of “generalized illegality,” which Burgos held insufficient to sustain a conviction for conspiracy, 703 F.3d at 10, 16, and Pérez-Meléndez determined insufficient to support a conviction for aiding and abetting. 599 F.3d at 46-47.
I thus respectfully dissent from the judgment.

. The majority notes that the Cl did not testify at trial. Supra at 235. I would add that the record reflects that the Government submitted an informative motion regarding the Cl, United States’ Informative Motion, United States v. Maymí-Maisonet, No. 3:12-cr-00623-GAG-SCC (D.P.R. Sept. 25, 2013), ECF No. 91, which suggests the Government originally intended that he testify. Maymfs brief noted that ’’[t]he case initially included a witness identified herein as the Cl. Discovery relating to the trustworthiness of the Cl was provided to the defense and the district court was informed by the Government before trial that the said witness would not be used.” The Government also had but was not able to use in its case in chief "a recording wherein the defendant is heard conversing with the Cl and with the two other defendants discussing the money issue — the bringing of the money for the purchase of the cocaine” as doing so, counsel conceded to the court, would be "unduly prejudicial” due to late notice to defense counsel. That the Government did not call the Cl to testify gives rise tó a negative inference as to the favorability of that testimony. Cf. Layne v. Vinzant, 657 F.2d 468, 472 (1st Cir.1981). And, needless to say, the fact that the Government had a recording of a conversation regarding the money allegedly used in the charged transaction, but was unable to use by reason of the Government's own inaction, cannot only not be used as evidence of knowledge of the criminal enterprise but raises a presumption that the "evidence” not used was not favorable to the Government. Cf. Commercial Ins. Co. of Newark, N.J. v. González, 512 F.2d 1307, 1314 (1st Cir.1975).

. I note at this juncture, as a general matter, that I view with increasing skepticism the practice of creating artificial criminal situations to arrest and prosecute individuals for real crimes. See, e.g., United States v. Kindle, 698 F.3d 401, 412-16 (7th Cir.2012) (Posner, J., concurring in part and dissenting in part), rev’d en banc sub nom. United States v. Mayfield, 771 F.3d 417 (7th Cir.2014); United States v. Hudson, 3 F.Supp.3d 772 (C.D.Cal.), rev’d sub nom. United States v. Dunlap, 593 Fed.Appx. 619 (9th Cir.2014).